Breckenridge, I think you have an introduction. Yes, Your Honor. Good morning. My name is Tillman Breckenridge, and I'm an adjunct professor at the William & Mary Law School. I work with the William & Mary Appellate and Supreme Court Clinic, and I'm just here to introduce Elizabeth Scott-Turner, a third-year law student at William & Mary, who will present the case on behalf of the appellant. Thank you. Thank you. Good morning. May it please the Court, my name is Elizabeth Turner, and I'm here on behalf of Appellant Gary Wall. Ms. Turner, would you pull that microphone down just a bit, please? Thank you. Is that better? Yes. I'm here on behalf of Appellant Gary Wall. When the Red Onion officials refused to allow Mr. Wall to participate in Ramadan in 2010 simply because he did not have a specific physical object to prove his religious sincerity, those officials violated Mr. Wall's rights under the Free Exercise Clause and the Religious Land Use and Institutionalized Persons Act. The District Court improperly granted summary judgment dismissing Mr. Wall's claims as moot and holding that the Red Onion officials were entitled to qualified immunity. The District Court's principal rationale for holding Mr. Wall's claims were moot was because Mr. Wall had been transferred from Red Onion to another facility. However, less than a month after the District Court's opinion, Mr. Wall was transferred back to Red Onion. After taking notice of the case DiPaola v. Wade, the District Court also held that Mr. Wall's claims for equitable relief were moot because the Department of Corrections had voluntarily discontinued the policy of requiring inmates to show a physical object in order to participate in Ramadan. This was an error because the defendants held the burden to prove that the policy was not likely to be reenacted. The burden is on the party asserting mootness to prove that there is no reasonable likelihood that the 2010 Ramadan policy would be reenacted. The defendants presented no evidence regarding the likelihood of the policy being reenacted and the only evidence on the record that the policy had even been discontinued came from another case entirely. And you don't think we could take judicial notice of that? It was proper for the court to take judicial notice of the fact that the policy had been discontinued, but DiPaola only shows that the policy was no longer enacted. It doesn't show that there's no likelihood that the policy will be reenacted. And as long as there's the possibility that this 2010 policy could be reenacted, Mr. Wall's claims are not moot. So you had an initial complaint in which it's pretty clear you asked for injunctive relief. Where in this amended complaint was injunctive relief asked for? Well, Your Honor, paragraph 21 of the amended complaint, which is on Joint Appendix page 33, also requests any relief that the court deems just and proper. This is a pro se plaintiff, so we have to construe his complaint liberally. He's not held to the same drafting standard as a lawyer. So your answer to my question is you didn't ask for it specifically. You want us to gleam it with this all-encompassing request for relief. Any other thing that you think the court ought to do? Yes, Your Honor. It was not specifically asked for. Okay. Your client is pro se, but he asked for it in the first one. I mean, maybe that falls in line if it's the first time and he didn't ask for it. But he asked for it in the first one, and in the second one he didn't even use the word injunctive. He could have said stop it or do something. He doesn't say anything about any type of injunctive relief in the amended complaint. Why should we give him the benefit of being pro se when he did so the first time around, and then upon redoing it he didn't do it? Well, I'm not sure that as a pro se plaintiff he would have understood the significance of including it in the first complaint and not including it in the amended complaint. The district court ruled on injunctive relief. So the district court seemed to think that Mr. Wall had properly included that type of relief in his amended complaint. The appellants at the district court, excuse me, the appellees at the district court level also argued that injunctive relief was moot. So both the defendants and the district court recognized that Mr. Wall was requesting injunctive relief. Does it help you, Ms. Turner, that in fact he included a request for declaratory relief in the amended complaint? Which technically is not injunctive relief, but I'm not sure there's a whole lot of daylight between injunctive relief and declaratory relief. I agree, Your Honor. I'm not sure that Mr. Wall would have understood the difference in those two forms of relief. So I do think that it helps that he included declaratory relief in his amended complaint. And as I mentioned before, in paragraph 21 he asked for any other sort of relief that the court deemed just and proper. And I think the district court correctly construed that to mean that he was requesting injunctive relief. Well, to answer that, let me see where we go with that. If you ask for declaratory relief, is that asking for injunctive relief in and of itself? I mean, just say I want declaratory relief. Is that sufficient? In this case, I don't believe it would be sufficient because it's an as-applied challenge. So Mr. Wall, an injunction would be the proper form of equitable relief in this instance. And as I mentioned, it's the burden of the defendants to put forward evidence to prove that the policy is not likely to be repeated. And until there's that sort of evidence. What do they have to do? Like when your kid said, and I hope to die. I'm sorry. I'm too old. You didn't say I hope to die. The promise wasn't sealed. What do they have to do? They said that we're not going to do it again. We have no intention of doing so. What do you think they have to do? No one at Red Onion said that they had the intention not to do it again. That was a statement in the appellee's brief that there's no. I think I believe the quote would be from their brief that there's no reason to believe that this is not a permanent change. However, the Red Onion facility used a different Ramadan eligibility policy in 2009, 2010, and 2011 at the least. So that pattern of changing the policy suggests that this change might not be permanent. And without some sort of evidence showing that the policy recognizing that the policy is unconstitutional and that it will not be reenacted short of that. There's no reason to believe that after this litigation is over, the Red Onion officials won't turn around. And again, require physical items to prove religious sincerity in order to participate in Ramadan. What if the Solicitor General of the Commonwealth stands up in a few minutes where you're standing now and says to this court, Your Honors, the Commonwealth assures this court this policy will not be reinstituted. Would that be enough? I think it would certainly work in their favor, but I don't think that it would be enough short of saying. It wouldn't be enough? No. In other cases, such pieces of evidence, such as an affidavit or. An affidavit would certainly be a useful, a valuable piece of evidence to show. To prove that this policy will not. The return will not return to the by the authorized representative to this court, an officer of this court standing before this court. Making such a declaration, you don't think would be enough. No, I don't think it would be enough because. The burden was at the trial court level as well. So. Mr. Wall's claim is still a lot. There's still a live controversy until we know that those officials at Red Onion will not will never again require a physical object in order to prove religious sincerity. It. Without. Some. Sort of. Sufficient without a sufficient ruling on that, I think the Red Onion officials are free to do it again and. Whether the solicitor general says so in this courtroom or not, I don't know that that will have the effect that a ruling of this court would have. Is it clear that district court really considered this declaratory judgment? I mean, the district court talked about equitable relief, injunctive relief, but this whole business of whether this voluntary cessation works to do away with mootness and declaratory judgment. Just does not seem to be findings there to support where the district court would have gone on that. And I don't know where we go with it without having some type of findings as to what this is. Is a policy. And the question is, is it treated like legislation or is it just policy type situation? So aren't we kind of left in a position where it's not clear that the district court actually ruled on that? Maybe a remand would be advisable to to decide that issue. Yes, your honor. Remand is certainly appropriate in this instance. There's not enough information on the record to know exactly who makes the policies, how they're changed. This particular policy was appears to be unwritten. There's no evidence on the record that it's even a written policy. There's a guidance document from the Department of Corrections that stated what the Ramadan eligibility policy was for 2010. But because Red Onion is a segregation facility, that guidance did not apply to them. Typically, a religious pass list for those inmates that attend religious services is used. Red Onion didn't have that, so they crafted this policy in order to alleviate that problem. When the guidance document itself says that in the absence of a pass list, the prison can use prior participation in Ramadan, participation in Ramadan or common fare at another facility, or participation in common fare as evidence of an inmate's religious sincerity entitling them to participate in Ramadan. It's clearly established in this circuit that a diet consistent with one's religion, including proper food during Ramadan, that's clearly established. The prison officials knew that it was clearly established, and a reasonable corrections officer should have known that when there's clear evidence that an inmate is a sincere Muslim, it's a constitutional violation to deny that offender his religious diet. In this case, Mr. Wall participated in common fare. He'd been approved for common fare by the Department of Corrections. He showed the officials his form approving him for common fare, and he participated in Ramadan at Red Onion and other facilities in the past. What is the declaratory relief you seek? We're seeking injunctive relief, specifically an injunction prohibiting the Red Onion officials or officials at a department. What is the declaratory relief you're seeking? We did not appeal the issue of declaratory relief. We're simply seeking an injunctive relief on behalf of Mr. Wall and damages for his 1983 claim. So you're not asking the court to make a determination, make a declaration, as to whether this policy exists in a legislative sense or whether or not it exists simply as a policy? And therefore, it's binding if it's a legislative type. You said you're not asking for declaratory relief. You only asked for injunctive relief, and we talked about that earlier, and you didn't plead injunctive relief. So I don't know where that's going. I think the fact that Mr. Wall, being pro se and having requested injunctive relief in his first complaint and then asking for any relief that the court deemed proper, the district court construed that to mean that he had requested injunctive relief. That's a proper remedy for a RLUIPA claim as well as a 1983 claim. Even if this court were to find that injunctive relief is moot, there's still the possibility for Mr. Wall to receive damages on remand because qualified immunity was not appropriate in this circumstance. The right to a diet consistent with one's religion is clearly established, and Mr. Wall showed the officials proof of his religious sincerity, and the facts on the record also conflict as to whether the officials intentionally denied Mr. Wall participation in Ramadan. There's conflicting evidence on the record for Mr. Wall saying that Warden Rowlett had come to ask him if he wanted to participate in Ramadan again, if he could show him a judgment, and Warden Rowlett misconstrued what he said or intentionally misinterpreted what he said to prevent him from being put back on the list. It simply is against common sense to require inmates in this situation to present a tangible object as evidence of their religious sincerity. It's especially irrational in Mr. Wall's situation because all of his physical possessions had been lost by the Department of Corrections. He had no physical possessions, and he showed the wardens when they came to check for his religious sincerity item. He showed them the judgment showing that all of his items had been lost, and given all of the proof that Mr. Wall showed them as to his religious sincerity, it was unreasonable for the officials to deny Mr. Wall his opportunity to participate in Ramadan. There are issues of fact on the record as to whether this policy was unreasonable to begin with, and I think remand would be appropriate in Mr. Wall's instance. And if I may, I would like to reserve the rest of my time for rebuttal. All right. You may. Mr. Getchell. Thank you, Your Honor. May it please the Court, Duncan Getchell for defendants. We don't write on a blank slate here because Diwala was before the district court below on judicial notice. We know what the court had available to it on the issue of mootness, and that included an exhibit that was in front of Judge Wilson, which is to the wardens and superintendents from the Chief of Corrections Operations, which provided that there has been a change in policy. The change in policy is a result of an investigation by the Virginia Department of Corrections Inspector General's Office. And does this go to the mootness of the injunctive relief that it looks like the district court went out and dealt with, even though it wasn't pled, or does it go to the mootness of the declaratory relief? Well, with respect to, I would say they're both equally moot if they're both before this court. Both of them have different reasons, though. With respect to mootness, a declaration that the Department of Corrections should not resume its old policy would not be anything but an advisory opinion in the absence of some indication. What's the effect of the voluntary cessation doctrine? I would say the voluntary cessation doctrine, which, by the way, was argued in this court when Diwala was appealed and this court affirmed the district court on mootness. So mootness has already been affirmed now in an unpublished opinion, not binding on this panel. Tell me the answer to that question. What's the effect in this case? The effect in this case is that both injunctive relief, had it been pled, would have been moot, and declaratory relief, which hasn't been appealed, is also moot because the policy has changed. And the nature of that change is really the question because if it's just a little old policy change, that doesn't necessarily mean that it's over. You could have changed it just because of the litigation, but if it has the characteristics of being a statute or being legislation, then it has more of a sense of permanency to it. And what I find somewhat troubling is, I don't know how you figure that out from this record. I would say that I commend to the court our treatment of the voluntary cessation doctrine in our brief, where we think the cases say that when you're dealing with a public state actor and not private litigants, the mere possibility of reinstitution of the policy is not going to prevent mootness. I wonder if you could simply concede that, or at least concede the point that this policy has the effect of law, that it is like a legislative piece of enactment here, and if you do it again, you are going to be in violation of this law you've just conceded in front of the Fourth Circuit. Is that something you can do? Well, the legislature can always change the law. Sure they could, but if they don't change it, can you stand in front of us now and say this is the law, and then if you go back, let's say, next week and violate it, what will be the outcome of that? Well, if the defendants here go ahead and violate it because they're all red onion officials? It wouldn't be just the defendants here. You said it has the effect of a statute or a piece of legislation. Anybody else that would violate it, if you'd like to be, would fall under it. I didn't say that. I don't acknowledge that the government exception to the voluntary cessation doctrine depends on something being a legislative act. But it has to be like it. It actually has to show that it's not. There has to be some showing that it's not just a trick. That's right. And that's what the court. It's not just there for litigation, just to get it out of the way. That's right. What is the evidence that it's not just, in your words, a trick? The evidence is that it was a result, we know, of an investigation by an inspector general. And he's not, in the nature of that office, he's not in the chain of command for doing litigation ploys. He has told the highest officials of the Department of Correction that this was not a policy that should be risked in light of the law and there should be a different policy and a different policy was adopted. So you think we should do like Texas has done on this and that's basically when a governmental official does something in this fashion, we should treat it like it has that force to it? I think when you're dealing with a state actor and the only evidence in the record is a strong indication of good faith, which is what I think you get from an inspector general's report, then yes, I think you should follow the Fifth Circuit. And while it wouldn't have the force of law, as you indicate, against others, if you were to do this against this defendant again, you'd have a problem. Well, I would think I would have judicial estoppel problems. I know technically judicial estoppel applies to facts and not law, but yes, it certainly would seem to me to be in the nature of a mixed question of law and fact that we do not have an intention of changing the policy. Would it make the law clearly established? No, that's an entirely separate issue. The law cannot possibly. I understand that, but I just want to know by you agreeing, do you now know? Is it now clearly established that if you do this, you are in violation? We're going to the qualified immunity on that, but I understand. I'm just thinking how this ties in with it from the voluntary cessation doctrine if you are saying that the statement of an official has this effect, and if it happens again, then you say, well, that's judicial estoppel. My question is, if it happens again, it seems like to me you've taken away the clearly established defense on qualified immunity because you know it. I don't think so, Your Honor. I think they're entirely separate and distinct concepts. The voluntary cessation cases. We don't have to go there today. But it could come up another day. That's just giving you a little forecast to be prepared for if it does. Yes, Your Honor. But we do maintain they're distinct. I would go on to the qualified immunity unless there are further questions on the issue of mootness. I just want to make sure we understand it because you got the injunctive relief, which it looks to me as though that's waived unless we find some way to read it in. This report looks like it did, but I just don't know how you do it. And then you got the declaratory relief. The defendant sort of said they aren't seeking it up here. I'm not quite sure. Maybe I might have confused her in the questions. But if you got declaratory relief and the question of mootness, there is that voluntary cessation doctrine, and you then have that consideration of what is the effect of the policy. And the question is, did the district court have to make findings that would be sufficient for us to be able to review to determine what is the effect of that policy? And that's why I'm having some unrest as to whether those findings are sufficient for that purposes and that maybe the best way to do it would send it back and say make some findings and tell us what you got there. Well, we know what the effect has been historically since the policy changed, and that is that the findings to that effect. Certainly in the record it is conceded that he has engaged in Ramadan since the policy changed. That's not disputed. And I believe I heard counsel for appellants say that they did not appeal the declaratory judgment claim, that they appealed only the injunction claim that they didn't plead. We talked about that. I mentioned that a few minutes ago. So on the qualified immunity, are you going to rest your head on the clearly established prong of that? Well, that is the heart of qualified immunity. And the point I would make is there's no case, this circuit is clear that to be clearly established for purposes of defeating qualified immunity, there has to be a decision from the Supreme Court of the United States or this circuit or the relevant Supreme Court of the state where the actions are implicated. And there is no case law in this circuit and there's no case law from the Supreme Court of the United States that says that requiring some objective evidence of sincerity is a violation of the First Amendment of somebody who's incarcerated. Except if you've got to accept the premise that what you're doing is requiring objective evidence. You know, this whole business of seeking evidence of religion, I don't know, that's a tough one and you've got to admit that's hard. Even if the case law is admitted, even someone can maybe not have the objective evidence, but that doesn't mean they do not have that faith. There are people who, some religions, many of them, you can convert right now on the spot. And, you know, so this business of just because you've got a book or a cloth, you belong, you don't have the book or the cloth, you don't belong, I'm not sure that's objective evidence. And I don't even know how you get objective evidence. I mean, we've got that congressional statute there that's pretty clear that gives the right of prisoners to have this. And there are reasons why you don't want prison officials telling prisoners which way to go on religion. I mean, there's some fundamental reasons for that. It seems to forget the fact you're a prisoner and you don't have rights. But when you come to that religious thing, you don't want people telling people in prison how they believe and what they can't believe. So that's the kind of muddleness when you're seeing objective evidence. I need to do a better job of explaining what I'm trying to say. I'm not sure you can. I'm just saying I maybe agree with you in some instances, but I'm just saying that's the difficulty in this case as to whether or not it's clearly established is, I mean, who would think that you can just do such a thing and establish a religion? I mean, is that something that has to be clearly established? Isn't that almost like you can use common sense and figure that one out? Let me make two points. One is, of course, the statute doesn't apply to the qualified immunity issue because you can't seek damages under the statute. So we're only dealing with the First Amendment and the Fourteenth Amendment. The second thing is that although generally you would think that the government is not properly in the business of saying what is and what is not a sincerely held religion, and, for example, the IRS is not permitted to decide what is and what is not a church for most purposes, there is authority from the United States Supreme Court, Cutter v. Wilkinson, which is a 2005 case that says that when you're dealing with somebody who, that when you're dealing into accommodation of a religious claim, the first threshold question is whether or not the claim is sincere. So whether or not it seems anomalous or not, that is the current state of the law. Is the claim the same as a practice? The context in which insincerity came up here was that almost more than half or right at half or slightly less than half of the inmates had claimed Ramadan privileges, and then on investigation it was established that they were not sincere in a large number of cases. I think 176 was the number that comes to mind. Once you accept the legal proposition that the Supreme Court has established, which is that prison officials can inquire into sincerity. What were they trying to privilege? Because I understand it was not eaten until a certain time of the day. That is correct. Why would someone want to? I guess I'm trying to understand. There's no big benefit to that. The case law with respect to penal institutions recognizes that one possibility of motivation is simply to make things difficult for the administration. And not care that the fact that you're going to suffer in doing it. Well, I don't know that anybody suffers. They get the same amount to eat. Are you talking about without food? No, they eat before dawn and they eat after sunset, but they still eat. Before dawn and then the whole day you don't eat and then you eat again, and they would do that to disrupt the government? Well, that's what the record shows because no one's challenged the proposition in the record that the reason that the inquiry was made into sincerity was there had been an investigation of the prior claims and the authorities had determined that the claims were insincere. I mean, once you accept that the inquiry can be made, and I think the law is indisputable that it can be, then what needs to be clearly established for plaintiff in order to go forward is that the method of inquiry that we selected here, which is that you have some object, including a pamphlet you can get free from the chaplain, in order to show that you are sincere in your claim. Were all these prisoners, were they given notice that this was going to come up in advance and then said, well, you can go to the chaplain and get that pamphlet or whatever is necessary? The affidavit of, I believe, the warden, but somebody's affidavit said that they were told during the window of opportunity from June 25th until July 25th that something like this would have to be shown. What does that mean, something like this? Well, no, the policy of having an objective religious item. Were they told they could just go to the chaplain and ask for a pamphlet and that would be it? I believe the affidavit says that. I believe you could also question whether or not this particular appellant, Mr. Wall, was told that before or after July 25th. I would not want to overstate the record, and so I would say that that is perhaps ambiguous, but I would still say it doesn't bear materially. Perhaps ambiguous. It doesn't bear materially. That's pretty ambiguous. I don't know whether, I can't tell from the record whether he was told, I can't tell from the record that somebody said that the generality was told, but I can say that it's a totally immaterial, ambiguous fact on well-established because there are no well-established limits on how you can test sincerity in this circuit or from the Supreme Court. The only thing we have and the only thing that the appellant argues are the Turner factors. Now, the Turner factors are not directed to the specific issue, and this circuit has made it clear that well-established means this issue and not some broader issue. Turner just inquires into when you have to accommodate the religious claim, and it creates a four-part balancing test. Now, I would assert that when you have a multi-part balancing test and no Supreme Court or circuit authority, that you can't have a well-established rule that the violation of which creates personal liability on the part of the prison officials because the whole purpose of qualified immunity is to give them immunity unless they, not some lawyer, not some legal clinic, unless they would reasonably know that what they're doing violated a well-established constitutional right, and I would say of all the cases that have come before this court recently, one that satisfies qualified immunity is this case where there's nothing from the Supreme Court, there's nothing from the circuit, and we have except for a much broader, nonspecific, multi-part balancing test. So I would think it's inherently incapable of supporting a damages claim. So, Mr. Getzler, you would agree that we can't test the reasonableness of that sincerity test, correct? Whether it's unreasonable or not. No, because that would be a merits question. The sincerity test... So we couldn't test... For example, you're saying that it wouldn't be well-established that you couldn't, a person once certified being a practicing Muslim, you couldn't test if sincerity was, you need to read the Koran without looking at the verses in Arabic, recitement in Arabic, and that's the test? That couldn't be the test. No, Your Honor. There's no case that says you can't do that, is there? I don't know of any case that says you can't make a test of inquiry of an inmate. So to answer my question, you think you really could? You could say, well, if you want to be a practicing Muslim in Red Onion, you have to be able to recite the Koran in Arabic without looking at the script? Well, under Qatar, which I have previously cited, the inquiry into reasonableness and sincerity can be made. And all I'm arguing here is, because you could always posit some extravagant test of sincerity, I'm saying the test of sincerity that was adopted here was not a clear violation under any case law, and therefore under the doctrine of qualified immunity, qualified immunity attached. Well, was he qualified to receive the meal fare, the restrictive diet? He had received the restricted diet, but the problem with the restricted diet as being a test for participation in the scheduling of meal service for Ramadan was it was broader than his faith. It also included Jewish prisoners and I think others. The meal restriction he was on was broader than that? Yes, Your Honor. So there was nothing else he was certified for or qualified for that would be strictly being a Muslim? I believe that the memos indicate that a nation of Islam, some other religion, and general Muslim are eligible for the Ramadan. And the question became, should sincerity be tested by having something? And the old policy was yes, and now the new policy is no. And so the question is, for this court, is the requirement to test sincerity by having something, was that so clearly a violation of the law as established by a controlling precedent of the Supreme Court or this case or this circuit so as to deprive these defendants of qualified immunity? And I think the answer has to be no. The problem is that you think Red Onion would even consider requiring that a Christian have to have a Bible in order to pray, go to the services and pray in order to have a Bible? Your Honor, for purposes of the qualified immunity inquiry, I take the law as I find it, and the law as I find it is that at least where it's not pretextual and in bad faith, and there's no evidence that it was here, that you may make reasonable inquiry into sincerity. Now what would be beyond the pale is for, I think, another case. But on this case, I don't see how there's even a reasonable argument that the qualified immunity has been lost. All right. Thank you, Your Honor. Thank you, Mr. Getchell. Ms. Turner, do you have some time? Not much, but you have some. Yes, Your Honor. I just want to start by addressing the declaratory relief. I misspoke. We did appeal the issues of both declaratory relief and injunctive relief. In our reply brief on page 5, it specifically says that this case should be remanded to examine declaratory and injunctive relief. As to injunctive relief, Mr. Wall's amended complaint on Joint Appendix 32 and 33, while he doesn't specifically ask for injunctive relief, the remedies that he's requesting are injunctive in nature. We would request that this court remand to determine that this policy is unconstitutional and issue injunctive and declaratory relief. Mr. Wall was forced to break his fast, as the district court noted, that he faced starvation for not being able to participate in Ramadan because this policy is wholly unreasonable. The appellees concede, at page 78 of the Joint Appendix, that Mr. Wall does have sincere beliefs. And on page 121 of the Joint Appendix, it shows that he was approved for common fair because of his sincere Muslim beliefs. Despite not having the physical item requested, there was ample proof for the Red Onion officials to recognize that he was a sincere Muslim believer and he was entitled to participate in Ramadan. He had been approved for common fair. He participated in common fair. He participated in Ramadan in the past. And he had a judgment showing that all of his belongings were lost. It was wholly unreasonable for the Red Onion officials to have all of these obvious signs that Mr. Wall was a sincere Muslim and still deny him participation. It is clearly established in this circuit that inmates are entitled to a diet consistent with their religious beliefs. That was stated in Loveless in 2006. But that's the problem. Mr. Gesher argues, I think, correctly, that it's beyond just whether or not he could get the meal. This is a practice in terms of the timing here. That's just one part of it. What beyond Loveless would say that they couldn't test sincerity as to whether or not they could have the meal, the Ramadan practice without some test of sincerity? He wasn't denied a meal here. Well, prison officials are entitled to question sincerity. They only have to accommodate sincere beliefs. We're simply arguing on Mr. Wall's behalf that this test of sincerity was unreasonable because asking for a physical item to prove something inherently intangible, like sincerity to one's faith, was unreasonable. And while there aren't cases outlining the limits that prison officials can take into inquiring as to inmates' religious sincerity, to have so many outward signs that Mr. Wall was sincere and still deny him to a reasonable corrections officer should have known that when there's objective evidence that an inmate is sincere in their faith that you cannot deny them their constitutionally mandated diet. As I believe Judge Wynn noted, it is unclear on the record as to whether Mr. Wall was made aware that he had to have a physical object. He stated in his response to the motion for summary judgment that he just signed up like he had done every year. There are significant questions of fact still on the record as to whether this policy was reasonable and whether it was reasonably applied so that we would request that this court remand Mr. Wall's case for further determination. And if there are no other questions, I will conclude. Mr. Turner, I just want to note we're happy to have you here. And if I could be parochial as the sole Virginia judge on this panel, I certainly note that being a student at the oldest and first law school in the country, and you follow a wonderful line of students, Jefferson and Marshall, who preceded you, I know George Witt would be very proud of you. Thank you very much. Thank you. We'll come down and greet counsel after we have our clerk adjourn the court for today. This honorable court stands adjourned until tomorrow morning at 8.30. God save the United States and this honorable court.
judges: Roger L. Gregory, Andre M. Davis, James A. Wynn, Jr.